# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**AMY HULL-WRIGHT, MICHAEL HULL, BETTY GARRETT SCHMIDT, TRUSTEE OF THE BETTY SCHMIDT REVOCABLE TRUST, SUSAN SCHWARTZ, and MITCHELL GARRETT,**
**Defendants Below, Petitioners**

**v.) No. 25-ICA-410**      (Oil and Gas Conservation Comm'n Docket No. 412, Cause Nos. 507-508, Order No. 1)

**FILED**
**May 1, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**ARSENAL RESOURCES, LLC,**
**Applicant Below, Respondent**

## MEMORANDUM DECISION

Petitioners Amy Hull-Wright, Michael Hull, Betty Garrett Schmidt, Trustee of the Betty Schmidt Revocable Trust, Susan Schwartz, and Mitchell Garrett appeal the October 2, 2025, order from the Oil and Gas Conservation Commission of West Virginia ("Commission"), which is part of the West Virginia Department of Environmental Protection ("WVDEP"). The Commission's order combined eighty-three oil and gas tracts (totaling 367.62 acres) in Harrison County into a newly formed Marcellus shale formation horizontal drilling unit (in a process called "unitization"). Petitioners own portions of the mineral rights in four of the affected tracts. The Commission named the newly formed unit the JOsborn 214 Unit ("Unit") and designated Respondent Arsenal Resources, LLC ("Arsenal"), as operator.[1] Petitioners objected to their inclusion within the Unit, arguing that Arsenal failed to make good faith offers for Petitioners' interests within the Unit. Arsenal filed a response to petitioners' appeal.[2] Petitioners filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, we find that deficiencies in the order prevent this Court from engaging in a meaningful appellate review. As explained below, a memorandum decision vacating the

---

[1] The Commission's order also formed a unit known as JOsborn 212; however, petitioners only own an interest in JOsborn 214, which is the only unit related to this appeal.

[2] Petitioners are represented by Edmund L. Wagoner, Esq., and Matthew B. Hansberry, Esq. Arsenal is represented by Max C. Gottlieb, Esq., J. Zak Ritchie, Esq., Maureen F. Gleason, Esq., and Levi B. Pellegrin, Esq.

1

order on appeal and remanding this matter to the Commission for further proceedings is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

On July 24, 2025, Arsenal filed its Application for Pooling and Unitization of Horizontal Well Operation ("Application") to unitize the oil and gas tracts within the proposed Unit pursuant to West Virginia Code § 22C-9-7a (2022) (the "Act"). At the time of the Application, Arsenal had obtained consent from royalty owners within the Unit equaling 75.1% of the net acreage in the Unit, and 100% of the net acreage of the oil and gas operators.[3] Additionally, Arsenal asserted that it made good faith efforts to obtain consent from all locatable interest holders. *See* W. Va. Code § 22C-9-7a(c)(2)(C)(i).[4] The Application included an affidavit by T.J. Baldwin, a landman for Arsenal, wherein he attested that Arsenal made good faith offers and efforts to obtain leases or consent to pool from the oil and gas interests within the Unit.

The Commission held an evidentiary hearing on Arsenal's Application on August 21, 2025. Relevant to this appeal, Arsenal presented testimony from Mr. Baldwin.[5] Mr. Baldwin testified to Arsenal's good faith efforts to negotiate with petitioners. Here, Arsenal's counsel attempted to establish good faith by repeatedly asking Mr. Baldwin whether he believed that Arsenal had negotiated with the mineral owners in good faith to which Mr. Baldwin simply responded in the affirmative, "Yes." Mr. Baldwin's direct testimony on the issue of good faith also indicated that past and present "economics"

---

[3] *See* W. Va. Code § 22C-9-7a(c)(2)(A) (requiring pre-application consent from royalty owners totaling 75% or more of the net acreage); W. Va. Code § 22C-9-7a(c)(2)(B)(i) (requiring pre-application consent from the oil and gas operators equal to 55% or more of the net acreage owned, leased, or operated by operators and the applicant).

[4] As a prerequisite, this statute states that an applicant must have:

Made good-faith offers to consent or agree to pool or unitize, and has negotiated in good faith with, all known and locatable royalty owners having executory interests in the oil and gas in the target formation within the acreage to be included in the proposed horizontal well unit who have not previously consented or agreed to the pooling or unitization of the interests and whose interests are not subject to development under § 37B-1-1, *et seq.* of this code[.]

[5] Arsenal also called geologist Dave Boyer and reservoir engineer Ross Schweitzer as witnesses. However, as set forth by the order on appeal, Mr. Boyer's and Mr. Schweitzer's testimony was scientific in nature, and did not relate to the negotiations between the parties.

played a significant role in Arsenal's efforts to drill the well and negotiate with the Unit's mineral owners, and that until recently, the economics had not been favorable for Arsenal for about six years. Arsenal's counsel did not attempt to further develop Mr. Baldwin's testimony to explain the general term "economics" and what it meant in the context of Arsenal's efforts in the matter at hand.

Thereafter, petitioners' counsel attempted to cross-examine Mr. Baldwin on the issue of good faith. This included counsel seeking an elaboration on Mr. Baldwin's earlier testimony about Arsenal's "economics" rationale. However, the Commission declined to allow petitioners' counsel to develop the issue, subjectively noting on its own accord that Arsenal is just a small business doing the best it can to try and make a living, and because Arsenal is the only "game in town" wanting to develop the Unit, then its offer is the best deal petitioners can receive. The Commission further noted that under the statute, the price offered during negotiations does not play a role in its determination of good faith, but rather, stated that the Legislature removed its authority to decide if a good faith price was offered, placed it with an independent third party for evaluation and preparation of a report, and bound the Commission to the findings of the report as dispositive on the issue of good faith. *See* W. Va. Code § 22C-9-7a(g)(4) (2022).[6]

At the close of evidence, the Commission addressed certain requests from Arsenal's counsel. For example, the Commission sustained an objection from Arsenal's counsel regarding its consideration of any evidence pertaining to market conditions and prices because it was not relevant under the Act. Arsenal's counsel also began to ask the Commission to provide an explanation of the evidence presented on good faith and the Commission's analysis of that evidence under the applicable statutory provisions; however, before counsel could explain the full request, a Commission representative interjected: "Well, that doesn't require anything. The Commission will do what the Commission does."[7]

---

[6] This statute requires an applicant to submit a summary of certain economic data regarding leases and payments within the proposed unit to an attorney or accountant selected by the Commission's chairman who is designated as an "independent, third party." Their role is to review the summary for accuracy and prepare a report for the Commission containing the calculation of certain averages related to the proposed unit, which the Commission is required to include in its order. The statute also provides for the independent, third party to be paid for their services, and permits an applicant to designate the summary it provides as confidential. However, as the Court notes later in this decision, the Commission's view of the report's implications for its authority in these matters is inaccurate.

[7] This remark was not made by a Commissioner, but rather, by the Commission's general counsel, who was identified in the record as one of the Commission's staff

Thereafter, petitioners reiterated their contention that the Commission must deny the Application because Arsenal failed to meet the good faith requirement of West Virginia Code § 22C-9-7a(c)(2)(C)(i). *See* W. Va. Code § 22C-9-7a(e)(2) ("The commission may not issue a horizontal well unit order pursuant to this section unless it finds that the applicant has before the filing of the application met the requirements of subsection (c) of this section."). However, the Commission voted to approve the Application and memorialized its ruling by order entered on October 2, 2025.

Addressing the evidence adduced with respect to the Unit, the Commission's order made the following references regarding good faith. First, with respect to Arsenal, the Commission's order simply noted that "Mr. Baldwin testified . . . and described Arsenal's good faith efforts to locate and negotiate with owners that were unleased or had existing leases with insufficient pooling rights." Second, the order noted that petitioners objected to the Application "based on their claim that Arsenal did not negotiate in good faith with them." The Commission's order further noted in shortform that petitioners' counsel "cross[-]examined Mr. Baldwin and entered exhibits into the record, consisting of prior negotiations between Arsenal and the objecting mineral owners." Given this information, the Commission made the singular determination that: "Arsenal has conducted good faith negotiations with all known and locatable executive interest holders." Ultimately, the Commission concluded: "Pursuant to West Virginia Code § 22C-9-7a(e)(1), the Commission has evaluated and considered all requirements set forth therein and concluded that the Application[] compl[ies] with the statute."[8] This appeal followed.

In this appeal, our review is governed by the State Administrative Procedures Act, which states:

---

members present at the hearing. The record further reflects that during the hearing, general counsel inserted himself throughout the hearing by commenting to petitioners' counsel that his questioning and/or position was irrelevant, offering interpretations of the evidence for the Commission, and making rulings on behalf of the Commission regarding certain objections and evidentiary matters. This is troubling considering general counsel was not the hearing examiner and is not a Commission member. Instead, the record soundly reflects that the Commission's chairman was presiding over the hearing as required by regulation. *See* W. Va. Code R. 39-2-2.1 ("The Commission Chairman shall preside over all hearings and meetings."). But for general counsel's noted interjections, the chairman was otherwise ruling on other objections and evidentiary matters without interference.

[8] West Virginia Code § 22C-9-7a(e)(1) mandates that the Commission consider a specific set of factors when evaluating applications. Among those factors is whether the applicant complies with requirements of West Virginia Code § 22C-9-7a(c).

4

The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision, or order are:

(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority or jurisdiction of the agency;
(3) Made upon unlawful procedures;
(4) Affected by other error of law;
(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

W. Va. Code § 29A-5-4(g) (2021); *accord* W. Va. Code § 22C-9-11(a) (1998) (stating that West Virginia Code § 29A-5-4 governs judicial review of Commission orders).

On appeal, petitioners argue that the Commission failed to properly consider whether Arsenal properly demonstrated that it negotiated in good faith as required by the Act. Namely, petitioners contend that the Commission failed to measure this threshold issue against any reasonable conception of the good faith standard, and that the Commission failed to reconcile all the evidence and provide a factual determination with supporting analysis regarding its ruling on good faith. Conversely, Arsenal contends that the Commission's decision was proper and supported by the record.

As the parties are uniquely aware, they recently presented the Court with similar arguments regarding a Commission order forming a different unit in the related case of *Hull-Wright v. Arsenal Resources, LLC*, No. 25-ICA-304, 2026 WL 125974 (W. Va. Ct. App. Jan. 16, 2026) (memorandum decision) ("*Arsenal I*"). In *Arsenal I*, we explained that the Commission's order was inadequate for the purposes of meaningful appellate review, vacated the order, and remanded the matter to the Commission. *Arsenal I*, 2026 WL 125974, at *3-5. As explained below, we conclude that like *Arsenal I*, the present order on appeal suffers from similar shortcomings and, thus, we find it necessary to vacate the decision and remand the matter to the Commission.

To begin, the Court notes that in *Arsenal I,* we provided the parties with a detailed explanation of the established precedent regarding the necessity for Commission orders to contain proper findings of fact and conclusions of law. *Id*. at *3-4. Because the parties are acutely aware of these principles, we do not need to rehash them in detail here. Instead, it is sufficient to state that after applying our analytical framework from *Arsenal I* to the

present case, the Court concludes that the Commission's order establishing the Unit does not contain findings and analysis sufficient for appellate review.

As this Court made clear in *Arsenal I*, the Commission is the trier of fact and is statutorily required to determine whether an application meets the requirements of the Act and as part of its mandate, the Commission is expressly obligated to consider **all** the evidence and determine whether an applicant negotiated in good faith. *See Arsenal I*, 2026 WL 125974, at *5 n.11.[9] However, in this appeal, the Commission's order contains no findings regarding the substance of the parties' exhibits and witness testimony placed on the record. Critically, the present order fails to offer any findings by the Commission as to what the exhibits and testimony convey, let alone the specific facts that the Commission drew from the record to support its decision to grant Arsenal's request to form the Unit.

Moreover, the parties offered the Commission conflicting positions on the issue of good faith; however, the Commission's order fails to reconcile those positions through pertinent findings and analysis regarding the weight and credibility of the evidence presented below. For example, the order makes no findings as to the date and amount of the offers made, let alone any factual findings regarding the parties' communications and

---

[9] *See* W. Va. Code § 22C-9-10(e) (1998) ("After any hearing and consideration of **all** of the testimony, evidence and record in the case, the commission shall render a decision in writing.") (Emphasis added). If anything, the Commission should be even more liberal than civil courts when it comes to admitting evidence. West Virginia Code § 29A-5-2 (1964) provides in pertinent part that:

> The rules of evidence as applied in civil cases in the circuit courts of this state shall be followed [in contested agency cases]. When necessary to ascertain facts not reasonably susceptible of proof under those rules, evidence not admissible thereunder may be admitted, except where precluded by statute, if it is of a type commonly relied upon by reasonably prudent men in the conduct of their affairs.

Under Rule 402 of the West Virginia Rules of Evidence, which apply to proceedings in the Commission, *see* W. Va. Code § 22C-9-10(b) (1998), "[r]elevant evidence is admissible unless any of the following provides otherwise: (a) the United States Constitution; (b) the West Virginia Constitution; (c) these rules; or (d) other rules adopted by the Supreme Court of Appeals of West Virginia." As noted elsewhere in this decision, the Commission is not limited to the report prepared by the independent reviewer when deciding whether there were good faith negotiations. If evidence is excluded by the Commission, "[a]ny party to any such hearing may vouch the record as to any excluded testimony or other evidence." W. Va. Code § 29A-5-2(a).

negotiations.[10] [11] [12] Instead, the Commission's order only offers conclusory statements to support its decision. This does not embody the Commission's role as the trier of fact.

Accordingly, we vacate the Commission's October 2, 2025, order as it relates to the formation of the JOsborn 214 Unit and remand the matter to the Commission for further proceedings, consistent with this decision.[13] On remand, the Commission shall consider all the evidence as the trier of fact and thereafter enter a new order ruling upon Arsenal's entire Application as required by the Act and other relevant statutes. The new order shall contain sufficient findings of fact and conclusions of law to facilitate a meaningful appellate review

---

[10] The parties cite to portions of the evidence adduced below on appeal and argue that those facts support their respective positions. However, those are facts for the Commission to reconcile for the first time on remand. If the parties submit conflicting evidence on critical issues, the Commission must explain how it resolved the conflict in reaching its decision. *See* Syl. Pt. 6, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996) ("Where there is a direct conflict in the critical evidence upon which an agency proposes to act, the agency may not elect one version of the evidence over the conflicting version unless the conflict is resolved by a reasoned and articulate decision, weighing and explaining the choices made and rendering its decision capable of review by an appellate court.").

[11] The inadequacies of the Commission's order aside, the Court also notes that the Commission's statements regarding the third-party report were inaccurate. There is no language within West Virginia Code § 22C-9-7a(g)(4) that binds the Commission to the subject report or otherwise prevents any party from presenting evidence related to the economic factors surrounding an applicant's decision to form a proposed unit or negotiate with its royalty owners. By the statute's plain language, the independent, third party is performing a ministerial function for the Commission, which in no way usurps or limits the Commission's obligation as trier of fact to consider and weigh all the evidence to determine if an applicant negotiated prices in good faith.

[12] We further note that because Arsenal "opened the door" on the issue of "economics" through its direct examination of Mr. Baldwin, petitioners' counsel should have been given full opportunity to develop that testimony upon cross-examination. This is particularly true considering Arsenal's failure to develop the issue beyond Mr. Baldwin's use of generalities in his direct testimony. Under our Administrative Procedures Act, "[e]very party shall have the right of cross-examination of witnesses who testify[.]" W. Va. Code § 29A-5-2(c) (1964).

[13] Indeed, this includes holding further hearings as necessary for the parties to develop a full and complete record on all issues for the Commission's consideration and ultimate decision to be set forth in a thorough order on remand.

should either party seek to file a new appeal.[14] The Clerk of this Court is hereby directed to issue the mandate contemporaneously herewith.

Vacated and Remanded.

**ISSUED:** May 1, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White

---

[14] As previously noted, this decision does not affect the Commission's ruling with respect to JOsborn 212. Likewise, we reiterate our observation in *Arsenal I* that this decision does not address the merits of the underlying decision and should not be interpreted as suggesting the outcome the Commission should reach upon remand. *See Arsenal I*, 2026 WL 125974, at *5 n.12.